UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DALE A. ROBACK,

                Plaintiff,                No. 09-CV-14478

vs.                                    Hon. Gerald E. Rosen

UPS RETIRED EMPLOYEES'
HEALTHCARE PLAN and
UNITED PARCEL SERVICE, INC., OHIO,

                Defendants.
_____/

OPINION AND ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS/FOR SUMMARY JUDGMENT

        At a session of said Court, held in
        the U.S. Courthouse, Detroit, Michigan
        on        October 26, 2010

        PRESENT:    Honorable Gerald E. Rosen
                            United States District Chief Judge

I. INTRODUCTION

This ERISA/breach of contract action is presently before the Court on the motion filed by Defendants United Parcel Service, Inc., Ohio and the UPS Retired Employees' Healthcare Plan [collectively referred to herein as "UPS"] seeking dismissal of Plaintiff Dale A. Roback's Complaint in which Roback challenges UPS's termination of his health care benefits. Plaintiff has responded to Defendants' motion and Defendants have replied.

Having reviewed the parties' briefs and supporting documents, and the record as a

1

whole, the Court finds that the pertinent facts and legal contentions are sufficiently presented in these materials, and that oral argument would not assist in the resolution of this matter. Accordingly, the Court will decide the motion "on the briefs." *See* Eastern District of Michigan Local Rule 7.1(f)(2). This Opinion and Order sets forth the Court's ruling.

## II. FACTUAL BACKGROUND

Plaintiff Dale A. Roback is a former employee of Defendant United Parcel Service. In 1998, Roback suffered an on-the-job injury and went off work. At the time, Roback was covered under UPS's Flexible Benefits Plan (the "Flex Plan").

The Flex Plan provides both short-term and long term disability benefits. For the first 12 months of a disability, health care coverage for participants and their eligible dependents is provided through the Flex Plan. After 12 months of disability, health care coverage is provided through the UPS Retired Employees' Health Care Plan [the "Retiree Plan"]. Eligibility for health care coverage under the Retiree Plan continues as long as a participant is eligible for long-term disability benefits through the Flex Plan. Once a participant's long-term disability benefits are terminated, his or her health care coverage under the Retiree Plan is terminated, as well. A participant is also eligible for continued health care coverage under the Retiree Plan if he or she retires from UPS at age 55 or older.

According to the evidence presented to the Court,[1] Mr. Roback began receiving long-term disability benefits on January 1, 1999, when he was 40 years old. In December 2000, Roback was informed that his long-term disability benefits were being terminated effective January 1, 2001 because it had been determined that he was not disabled from performing the duties of any occupation for which he was reasonably qualified. Although Roback's eligibility for health care coverage under the Plan ended on the date his long-term disability benefits were terminated, due to a clerical error, he continued to receive health care coverage until a Plan audit that was conducted in 2008 revealed the error. Following the audit, on June 30, 2008, Roback's health care benefits were terminated. Plaintiff was notified of the error and the termination of his health care benefits on July 24, 2008. *See* Plaintiff's Ex. 4.

The July 24, 2008 letter notifying Mr. Roback that his benefits were terminated stated that "this decision to terminate your health care coverage is not subject to the Plan's appeal procedures since the termination was based on an eligibility determination." *Id.* Notwithstanding this notification, on December 3, 2008, Roback wrote the Plan Administrator advising him that he was appealing the decision and that he

---

[1] Because, as more fully explained below, this matter is before the Court on a purely procedural and jurisdictional motion for dismissal on statute of limitations and preemption grounds, and not for an "on the merits" review of a denial of benefits claim pursuant to *Wilkins v. Baptist Healthcare System, Inc.,* 150 F.3d 609 (6th Cir. 1998), the Court has not been presented with a full administrative record. The facts, therefore, are gleaned from the records appended to the parties' briefs, the authenticity of which is not disputed, and which, the Court finds sufficiently present the facts needed for adjudication of this matter.

had retained an attorney to represent him. *See* Defendants' Ex. D. The Plan Administrator forwarded Roback's letter to the Plan's claims administrator, the Benefit Determination Review Team (the "BDRT") which, despite the disclaimer in the July 24 letter, treated the matter as a first-level appeal[2] of discontinuance of benefits in accordance with the Plan's appeal procedures, *see* Plaintiff's Ex. 7, and Roback's claim thereafter proceeded through the full round of administrative appeals.

The BDRT's first level review was completed on January 14, 2009. *See* Plaintiff's Ex. 12.[3] Following the first-level appeal decision, Plaintiff forwarded to UPS additional information for Defendants' consideration in connection with his second-level appeal. This additional information included materials concerned Mr. Roback's redemption of his workers' compensation claim. Specifically, Plaintiff sent to the claims administrator a copy of the transcript of his redemption hearing, and a "PowerPoint" presentation made by UPS to Roback, allegedly as an inducement to him accepting redemption of his workers' compensation claim. (The redemption of Mr. Roback's workers' comp claim

---

[2] The UPS Plan provides for two-levels of administrative appeals. The first-level appeal is to the BDRT. The second-level appeal is to the Claims Review Committee.

[3] Although Plaintiff was apparently notified of the January 14, 2009 determination, neither party has presented the Court with a copy of that determination, though it is apparent that that determination was not favorable to Plaintiff. The first-level appeal determination is referenced in a March 3, 2009 letter [Plaintiff's Ex. 12] sent to Plaintiff by the Claims Review Committee, informing him that the additional information he sent to the BDRT after the January 14 determination had been forwarded to the Committee. The Claims Review Committee is responsible for second-level appeals. *See* Defendant's Ex. A, p. 53.

occurred three and a half years earlier, in 2005.)

As indicated above, Mr. Roback suffered an on-the-job injury some time in 1998. On July 7, 2005, Mr. Roback entered into an Agreement to Redeem Liability with UPS [the "Redemption Agreement"] in settlement of his workers' compensation case. *See* 7/7/05 Hearing Tr., Plaintiff's Ex. 3; Agreement to Redeem Liability, Defendants' Reply Ex. A. Pursuant to this Redemption Agreement, Roback was paid $63,364.00 up front, in cash, plus a structured settlement of $280,267.00 paid over time. *See id.* In exchange, Roback agreed to

> forever release, acquit, and discharge UPS and its subsidiaries, affiliates, agents, servants, insurers, representatives, and attorneys of and from any and all claims, demands, actions, and causes of action of every kind, nature and description, which I had, have, or may hereafter have arising in any way out of or in connection with my employment, termination of employment, resignation from employment, or any injuries sustained during the course of my employment with UPS, whether or not these are known to me at this time.

Redemption Agreement, § 3.[4]

At the Redemption Hearing, Mr. Roback posed a question concerning the

---

[4] The Agreement also contained a merger clause, pursuant to which Roback acknowledged

> I understand that this Agreement is contractual in nature. I also understand and agree that there are no agreements, understandings or representations made by UPS, Liberty Mutual Insurance Company, their agents, representatives, or attorneys except as expressly stated in this Agreement and the Agreement to Redeem Liability executed in connection with the redemption and settlement of my workers' disability compensation claim.

*Id.* at § 4.

continuation of his insurance:[5]

> MR. ORLOWSKI [UPS's attorney]: I know there was -- you had another couple questions about whether your insurance would continue and whether you'd accrue pension credits so that you could retire in nine years at age fifty-five.
>
> THE WITNESS [Mr. Roback]: That's correct.
>
> BY MR. ORLOWSKI:
>
> Q: And you indicated that you would be satisfied with my statement that you were covered in the summary plan description as an LTD employment status, now, whatever that says in there dictates what rights you have in regards to those two issues; is that satisfactory to you?
>
> A: Yes it is.

7/7/05 Hrg. Tr., Plaintiff's Ex. 3, pp. 20-21.

The Workers Compensation Judge approved the Redemption Agreement and, at the conclusion of the hearing, Roback signed the Agreement in the presence of the Judge. *Id.*, p. 25.

After reviewing the transcript of the workers' compensation hearing and the other additional materials submitted by Plaintiff for a second-level appeal, the Claims Review Committee upheld the termination of Roback's medical benefits. *See* Defendants' Ex. B. The Committee specifically addressed Mr. Roback's reliance upon his redemption of his

---

[5] The PowerPoint presentation which presumably pre-dated the Redemption Hearing apparently raised questions for Roback concerning his medical coverage because, although the "Benefits" page indicated "H&W continue under LTD", the "What needs to happen" page of the presentation indicated a need to "Verify Benefits." *See* Plaintiff's Ex. 2.

workers' compensation claim in the letter it sent to Plaintiff's Attorney on April 20, 2009 [Plaintiff's Ex. 14; Defendants' Ex. B], and found no basis in the documents Roback submitted for his claim that he was promised or otherwise guaranteed healthcare coverage as consideration for the release of his workers' comp claim:

> In the appeal letter, you state that Mr Roback "redeemed his workers compensation claim on July 7, 2005." You aver that under the redemption agreement Mr. Roback would continue to receive his healthcare benefits and/or pension credits from UPS until he turned 55, and [sic; at] which time he would be eligible to retire. After a thorough review of the information submitted, the Committee finds that Mr. Roback is not eligible for health care benefits under the Plan. Therefore, based on the totality of the evidence submitted and the terms of the Plan, the Committee has denied Mr. Roback's appeal. The following is an overview of the underlying premises for our determination.
>
> In support of Mr. Roback's appeal, you submitted the transcript of Mr. Roback's redemption hearing, at which Mr. Roback answered questions regarding his understanding of the terms of the redemption agreement. We note that you did not submit the entire transcript as page 12 is not included in the document.[6] The following discussion between Mr. Robert Orlowski, an attorney, and your client, Mr. Roback, can be found on page 20 of the transcript:
>
>> Question: All right, I know there was -- you have another couple questions about whether your insurance would continue and whether you'd accrue pension credits so that you could retire in nine years at age fifty five.
>>
>> Answer (Roback): That's correct.
>>
>> Question: And you indicated that you would be satisfied with my statement that you were covered in the summary plan description as an LTD

---

[6] Page 12 is not included in Plaintiff's Ex. 3 filed with this Court, either.

>employment status, now, whatever that says in
>there dictates what rights you have in regard to
>those two issues; is that satisfactory to you?
>
>Answer (Roback): Yes, it is.

>As this statement shows, Mr. Roback understood that he would continue to receive benefits under the Plan so long as he satisfied the eligibility requirements contained in the Plan documents.  Moreover, there is nothing in the transcript indicative of a promise to continue Mr. Roback's benefits under either the Flex Plan or the Plan.  Instead, the transcript makes clear that the governing plan documents would control disposition of these benefits.  Indeed, the Settlement Agreement signed by Mr. Roback does not promise or otherwise guarantee healthcare coverage as consideration for the release of his claims.  Thus, Mr. Roback simply cannot claim that he was promised such benefits as part of his workers' compensation settlement.  Because Mr. Roback is no longer disabled under the terms of the LTD Plan, he is no longer eligible for health care coverage under the Plan.
>
>We also reviewed the PowerPoint presentation you submitted on behalf of Mr. Roback. After reviewing this presentation we note that it does not contain any reference to the length of time for which Mr. Roback would receive long-term disability benefits or health care coverage.  As such, it does not support the claim that Mr. Roback would receive health care coverage until age 55.  Indeed, Mr. Roback was specifically told in the hearing that his eligibility for such benefits was governed by the terms of the Plan and the Flex Plan.
>
>We regret that our review was not favorable, however, we must adhere to the Plan guidelines.  This is the Claims Review Committee's final decision.  We are required by federal law to inform you that you may have a right to bring a civil action in federal court in accordance with ERISA Section 502(a).  In addition, you are also entitled to receive, upon request and free of charge, reasonable access to and copies of all documents, records, and other information relevant (as defined by ERISA) to your claim for benefits.  Send your request to Claims Review Committee, Re:  Request for information, 555 Glenlake Parkway NW, Atlanta, GA 30328.

Plaintiff's Ex. 14; Defendants' Ex. B.

On May 6, 2009, Plaintiff's attorney sent UPS three letters, in one of which he stated:

> I have reviewed the Summary Plan Description and the Benefit Plan for UPS retired employees and I am unable to find the time provided for under the terms of the Plan to file an appeal to the United States District Court under Section 502 of ERISA.
>
> If I have missed the time to file an appeal provisions under the terms of the Plan, please direct my attention to the section of the Plan which provides for the time limit to bring such an appeal.

Plaintiff's Ex. 16.[7]

Bryan Brum of UPS's Legal Department responded to all the questions posed by Plaintiff's counsel in his May 6 correspondence, including his question concerning the time limit for filing an appeal in the district court, in a letter dated May 21, 2009. In pertinent part, Mr. Brum's letter stated:

> Appeal and Litigation Filing Deadlines
>
> Your letter to me requests information regarding deadlines for filing an appeal and instigating litigation in federal court. Please find enclosed a copy of the Summary Plan Description ("SPD") for UPS Retired Employees' Health Care. The section regarding appeals begins on page 51 and is tabbed. The UPS Claims Review Committee denied Mr. Roback's appeal in correspondence to you dated April 20, 2009. As such, Mr. Roback has exhausted his administrative appeals under ERISA, and as explained in the last paragraph of the April 20 letter, now has the right to bring a civil action in federal court against the Plan. Please see page 53 of

---

[7] In Plaintiff's other May 6 correspondence, Plaintiff's counsel asked about Mr. Roback earning pension credits after he went on disability leave and upon redeeming his workers compensation claim [*see* Plaintiff's Ex. 15] and his offer to resolve the matter by way of a compromise settlement in lieu of commencing litigation in federal court. [*See* Plaintiff's Ex. 16, ¶ 4].

the SPD, which explains the deadline for filing legal action to recover Plan benefits.

Plaintiff's Ex. 17.

As indicated in Mr. Brum's letter, the deadlines for filing a legal action are set forth on page 53 of the SPD, which provides:

> *Limitation on Legal Action*
>
> Any legal action to receive Plan benefits must be filed the earlier of:
>
> - Six months from the date a determination is made under the Plan or should have been made in accordance with the Plan's claims review procedures, or
>
> - Three years from the date service or treatment was provided or the date the claim arose, whichever is earlier.
>
> Your failure to file suit within this time limit results in the loss/waiver of your right to file suit.

Defendant's Ex. A, p. 53.[8]

On November 16, 2009, Plaintiff filed his Complaint in this Court. As originally filed, Plaintiff's Complaint contained three counts: an ERISA denial of benefits claim (Count I); an ERISA breach of fiduciary claim (Count II), and a breach of contract claim (Count III). All three of these counts are predicated upon UPS's termination of his

---

[8] The Court notes several months before being provided a copy of the SPD by UPS in May 2009, Plaintiff's counsel had previously requested, and had been provided, a copy of the SPD on January 7 and February 5, 2009 [*see* Plaintiff's Exs. 7 and 8] and, in fact, acknowledged his awareness of the six-month time limit for filing a lawsuit long before being sent the tabbed copy of the SPD on May 21, 2009. *See* letter from Plaintiff's counsel to UPS dated February 12, 2009 [Plaintiff's Ex. 9].

medical benefits. Plaintiff has stipulated to the dismissal of his breach of fiduciary claim in Count II, leaving only his ERISA claim in Count I and his breach of contract claim in Count III for adjudication.

On March 8, 2010, Defendants filed the instant Motion to Dismiss. In this Motion, Defendants claim that Plaintiff's claim to recover benefits in Count I should be dismissed because it is time-barred, and his breach of contract claim in Count III should be dismissed because it is preempted under ERISA.

### III. DISCUSSION

#### A. STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT

Although Defendants brought this motion as a Fed. R. Civ. P. 12(b)(6) motion to dismiss, where, as here, matters outside the pleadings are presented, the motion must be treated as one for summary judgment under Rule 56.[9]

Summary judgment is proper "'if the pleadings, discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material

---

[9] Though some of the documents presented by Defendants are referred to in, or are central to, Plaintiff's complaint, and as such, may properly be considered as part of the pleadings so as to allow consideration of these documents in a motion brought under Rule 12(b)(6), *see, e.g., Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 428 (6th Cir. 2008), not all of the documents presented fall within this category. And, since Plaintiff has been afforded the opportunity to, and, in fact, has himself presented material outside the pleadings, pursuant to Fed. R. Civ. P. 12(d), the Court will convert the motion to a Rule 56 motion and consider all of the documents presented by the parties. Formal advance notice of the Court's decision to convert the motion under these circumstances is not necessary because Plaintiff suffers no surprise or prejudice by the Rule 56 conversion.

fact and that the moving party is entitled to judgment as a matter of law.'" Fed. R. Civ. P. 56(c)(2).

As the Supreme Court has explained, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp*., 434 F.3d 810, 813 (6th Cir. 2006). However, the nonmoving party "may not rely merely on allegations or denials in its own pleading," but "must -- by affidavits or as otherwise provided in [Rule 56] -- set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Moreover, all affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). Finally, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack*, 434 F.3d at 814 (alteration, internal quotation marks, and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find" for the nonmoving party, the motion should be granted. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Co.*, 475 U.S. 574, 587 106 S.Ct. 1348, 1356 (1986); *Betkerur v. Aultman*

*Hospital Association*, 78 F.3d 1079, 1087 (6th Cir. 1996). The Court will apply these standards in deciding the motion presently before the Court.

B.     PLAINTIFF'S ACTION TO RECOVER MEDICAL BENEFITS IS TIME-BARRED

Because ERISA does not specify a limitations period for bringing an action to recover benefits, courts commonly borrow the most analogous state statute of limitations, which is that for breach of contract. *See Meade v. Pension Appeals and Review Committee*, 966 F.2d 190, 194-95 (6th Cir. 1992). The Michigan breach of contract statute of limitations is six years. *See* M.C.L. § 600.5807(8). However, the Sixth Circuit has held that an ERISA plan itself may include a shorter period of limitations. *See Santino v. Provident Life and Acc. Ins. Co.*, 276 F.3d 772, 776 (6th Cir. 2001). The UPS Plan provides such a shortened limitations period:

> ***Limitation on Legal Action***
>
> Any legal action to receive Plan benefits must be filed the earlier of:
>
> - Six months from the date a determination is made under the Plan or should have been made in accordance with the Plan's claims review procedures, or
>
> - Three years from the date the service or treatment was provided, or the date the claim arose, whichever is earlier.
>
> Your failure to file suit within this time limit results in the loss/waiver of your right to file suit.

Defendants' Ex. A, p. 53.

Plaintiff filed his complaint in this action on November 16, 2009. As indicated above, the final determination denying Plaintiff's claim for benefits was made on April 20, 2009. Six months from that date is October 20, 2009. Under the first prong of Plan's limitation of action provision, Plaintiff's claim is clearly time-barred.

Plaintiff argues that the three-year limitation set forth in the second prong of the Plan's provision -- three years from the date the claim arose -- should apply. Presumably, Plaintiff deems his claim to have arisen when he was notified that his medical benefits were terminated on July 24, 2008, thereby having until July 24, 2011 to file suit. Plaintiff obviously overlooks that the Plan limitation provision states that "any legal action to receive benefits must be filed ***the earlier of***" six months from the final determination ***or*** three-years from the date the claim arose. *Id.* The provision does not give Plaintiff the choice of which prong will govern.

Plaintiff argues, in the alternative, that Michigan's six-year statute of limitations for breach of contract actions should apply because the Plan's limitation provision is ambiguous. In support, Plaintiff cites *Armbruster v. K-H Corp.*, 206 F. Supp. 2d 870 (E.D. Mich. 2002). *Armbruster*, however, is wholly inapplicable. In that case, the ERISA plan did not contain a limitation of action provision. Therefore, the Court determined that "the most analogous" state statute of limitations -- the six-year statute of limitations applicable to breach of contract actions -- applied. However, borrowing a state statute of limitations "is unnecessary when the parties have contractually agreed on a limitations period and that limitations period is reasonable." *Medical Mut. of Ohio v. k.*

*Amalia Enterprises*, 548 F.3d 383, 390 (6th Cir. 2008); *Northlake Regional Med. Ctr. v. Waffle House Sys. Employee Benefit Plan*, 160 F.3d 1301, 1303 (11th Cir. 1998). Plaintiff does not argue that either of the limitations periods in the UPS Plan is unreasonable, and even if he did, the Court would find no merit in such an argument as similar contractual limitations periods have been upheld and found to be reasonable. *See e.g., Northlake, supra* (finding 90-day limitation period reasonable and affirming dismissal of case on statute of limitations grounds); *Rice v. Jefferson Pilot Financial Ins. Co.*, 578 F.3d 450, 454 (6th Cir. 2009) (finding plan's "three-years from date the claim arose" limitation provision to be reasonable); *see also Medical Mut. of Ohio, supra*, 548 F.3d at 390; *Morrison v. Marsh & McLennan Companies*, 439 F.3d 295, 301-303 (6th Cir. 2006).

Furthermore, contrary to Plaintiff's assertion, there is no ambiguity in the Plan's limitation language. First, it is not ambiguous to have two possible dates of measure, where the operative one depends on a simple condition -- "the earlier of" the two controls. Second, Plaintiff's counsel himself acknowledged in correspondence even before a final determination was reached by the Claims Review Committee that Plaintiff's claim was subject to the six-month limitation provision. *See* February 12, 2009 letter from Counsel, Plaintiff's Ex. 9 (stating, "Under your Summary Plan Description a lawsuit must be filed within (180) days of the determination to deny benefits. . . .") Counsel, thus, had earlier identified, recognized and acknowledged the six-month limit.

For all of the foregoing reasons, the Court finds that Plaintiff's action to recover benefits under the UPS Plan is time-barred.

C.  PLAINTIFF'S BREACH OF CONTRACT CLAIM IS PREEMPTED UNDER ERISA

ERISA contains a broad preemption provision in Section 514(a) of the Act, 29 U.S.C. § 1144(a). *See Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990) ("The pre-emption clause [of ERISA] is conspicuous for its breadth.") This preemption provision provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Thus, "[i]f a state law relates to employee benefits plans, it is pre-empted." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45, 107 S.Ct. 1549 (1987) (internal punctuation omitted). The Supreme Court has directed that the phrase "relates to" is to be given "its broad common-sense meaning." *Id*. at 47. A state law relates to an employee benefit welfare plan "if it has a connection with or reference to such a plan." *Id*. (quoting *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 730, 105 S.Ct. 2380 (1985)). "State law" includes "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1).

The Supreme Court summarized the purpose of preemption under Section 514(a), 29 U.S.C. § 1144(a), as follows:

> Section 514(a) was intended to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government.

> Otherwise, the inefficiencies created could work to the detriment of plan beneficiaries. Allowing state based actions like the one at issue here would subject plans and plan sponsors to burdens not unlike those that Congress sought to foreclose through § 514(a). Particularly disruptive is the potential for conflict in substantive law. It is foreseeable that state courts, exercising their common law powers, might develop different substantive standards applicable to the same employer conduct, requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction. Such an outcome is fundamentally at odds with the goal of uniformity that Congress sought to implement.

*Ingersoll Rand, supra*, 498 U.S. at 142 (citations omitted).

Accordingly, any state law cause of action "that duplicates, supplements or supplants the ERISA civil enforcement remedy conflicts with the clear Congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 209 (2004).

The Sixth Circuit "has repeatedly recognized that virtually all state law claims relating to an employee benefit plan are preempted by ERISA." *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir.1991). As the court explained in *Cromwell*, "It is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit." *Id*. Thus, the Court must "determine whether the claim[] 'relate[s] to' the [plan]." *Ramsey v. Formica Corp.*, 398 F.3d 421, 424 (6th Cir. 2005). "To do that, [the Court] consider[s] the kind of relief that plaintiff[] seek[s], and its relation to the [plan]." *Id.*

Plaintiff Roback's breach of contract claim in Count III of his Complaint unquestioningly relates to the UPS Retiree Health Care Plan. Though he claims that the contract breached was the workers' compensation redemption agreement he entered into with UPS on July 7, 2005, the damages he alleges to have suffered is the loss of medical benefits due to the termination of benefits he had been receiving under the ERISA Plan until June 30, 2008. He claims that UPS made promises at his workers' compensation redemption hearing that entitle him to the very medical benefits he seeks from the Plan (in Count I) that were denied in his administrative claim and appeals. *See* Complaint ¶¶ 4, 7, 23-25.

Furthermore, in his appeal letter, Roback asserted this very Redemption Agreement contract claim against the Plan, and alleged that statements were made at his workers' compensation hearing for which the Plan should award him Plan-based medical benefits. *See* Defendants' Ex. C; Plaintiff's Ex. 11 (2/21/2009 appeal letter from Plaintiff's counsel). The Claims Review Committee reviewed and considered the transcript of the workers' comp hearing and the "Power Point" presentation, and specifically addressed Plaintiff's allegations that promises were made to him at the redemption hearing and in the presentation in its April 20, 2009 final decision. *See* Defendants' Ex. B; Plaintiff's Ex. 14.

In light of the foregoing, it can hardly be said that Plaintiff's breach of contract claim is "too tenuous, remote or peripheral to warrant a finding that the [claim] 'relates

18

to' the plan." *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 100 n. 21 (1983). Rather, Plaintiff's breach of contract argument was central to his claim and appeal to the Plan for Plan benefits. Count III, therefore, relates to the Plan and, thus, falls squarely withing the scope of ERISA's exclusive regulation. As such, the claim is preempted by ERISA. Accordingly, Count III will be dismissed.[10]

## CONCLUSION

For all the reasons stated above in this Opinion,

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss Plaintiff's Complaint **[Dkt. # 8]** is GRANTED. Therefore,

---

[10] Even if it were not preempted, the Court notes that the Redemption Agreement Roback signed after the redemption hearing was concluded contains a merger clause pursuant to which Roback expressly agreed

> I understand that this Agreement is contractual in nature. I also understand that there are no agreements, understandings or representations made by UPS, Liberty Mutual Insurance Company, their agents, representatives or attorneys except as expressly stated in this Agreement and the Agreement to Redeem Liability [to which it is appended and explicitly incorporated by reference] executed in connection with the redemption agreement of my workers' disability compensation claim.

*See* Redemption Agreement, Defendants' Reply Ex. A, ¶ 4.

Under basic contract principles, Plaintiff cannot rely upon earlier promises where, as here, a subsequent written agreement contains a merger clause which "serves to integrate the agreement and makes the agreement a final written expression of the parties." *Kellogg Co. v. Sabhlok*, 471 F.3d 629, 633 (6th Cir. 2006) (quoting *General Aviation, Inc. v. Cessna Aircraft Co.*, 915 F.2d 1038, 1041 (6th Cir. 1990)). Plaintiff's state law breach of contract claim, therefore, would be barred by the Redemption Agreement.

IT IS FURTHER ORDERED that Plaintiff's Complaint be, and hereby is, DISMISSED, in its entirety, with prejudice.

Let Judgment be entered accordingly.

                                                      s/Gerald E. Rosen
                                                      Chief Judge, United States District Court

Dated: October 26, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 26, 2010, by electronic and/or ordinary mail.

                                                        s/Ruth A. Gunther
                                                      Case Manager